UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NXIVM CORPORATION,

                 Plaintiff,

  v.                                                   **DECISION AND ORDER**
                                                              09-CV-338S

RICK ROSS, a/k/a/ Ricky Ross, d/b/a Ross
Institute of New Jersey or Rick A. Ross Institute
of New Jersey, MORRIS SUTTON, ROCHELLE
SUTTON, and LOLLYTOGS, LTD,

                 Defendants.
_____

## I.  INTRODUCTION

On March 5, 2009, Plaintiff commenced this case by filing a Summons and Complaint in the Supreme Court for the State of New York, Niagara County, alleging fourteen claims against Defendants.  Before Plaintiff had formally served any Defendant with the Summons and Complaint, three of the four named Defendants received a copy of the Complaint, and removed the case to this Court based on federal diversity jurisdiction.  Presently before this Court is Plaintiff's Motion to Remand.  For the reasons discussed below, Plaintiff's Motion is denied.

## II.  BACKGROUND

### A.  Facts

Plaintiff NXIVM is a New York corporation with its principal place of business in Niagara Falls, New York.  (Compl., ¶ 1.)  NXIVM has locations in over 32 countries. (Compl., ¶ 6.) According to the Complaint, NXIVM's business includes "training, coaching

1

and ethics programs designed primarily for leaders, teachers, executives, organization heads, concerned citizens, decision makers and others who value ethical, humanitarian performance." (Compl., ¶ 6.)

Defendants Morris and Rochelle Sutton ("Suttons") are married, and have a son, Michael Sutton. (Morris Cert., ¶ 2; Rochelle Cert., ¶ 2; Compl., ¶ 10.) Morris and Rochelle live together in Elberon, New Jersey. (Morris Cert., ¶ 2; Rochelle Cert., ¶ 2.) The Sutton family owns Defendant Lollytogs Ltd. ("Lollytogs"), a clothing manufacturing business. (Compl., ¶ 10; Docket No. 16-5, ¶ 3.) Lollytogs is a New York corporation with its principal corporate offices in New York, New York. (Compl., ¶ 4.) Michael Sutton worked at Lollytogs, and held the position of partner and vice president. (Docket No. 16-5, ¶ 3.)

In the fall of 2000, Michael attended a course at NXIVM. (Compl., ¶ 10.) Following his coursework at NXIVM, Michael allegedly began to reduce the time he spent working at Lollytogs. (Compl., ¶ 11.) Eventually, Michael informed his father that he wanted to leave the family business in order to become more involved with NXIVM. (Docket No. 16-5, ¶ 6.) According to Michael, his father became upset with this decision. (Id.) Michael stated that his father blamed NXIVM, and threatened to use his resources to destroy NXIVM. (Id.)

Thereafter, the Suttons hired Defendant Rick Ross ("Ross"), an individual, who claims to be an expert in the field of "destructive cults, controversial groups and movements," for the purpose of persuading Michael to leave NXIVM. (Compl., ¶¶ 7 & 12.) Ross resides and does business in New Jersey, and operates two websites – www.cultnews.com and www.rickross.com. (Compl., ¶¶ 2 & 7.) According to the Complaint, Ross met with Michael Sutton at the Lollytogs corporate offices in New York, on at least two occasions. (Compl. ¶ 12.)

On March 6, 2008, Ross published an article on his website discussing NXIVM. (Compl., ¶ 14; Docket No. 1, Ex. A.)  In the article, Ross characterized NXIVM as a "purported cult," that is "targeting" college a capella groups. (Docket No. 1, Ex. A.) Ross's article also mentioned that some of the NXIVM program participants "have sought psychiatric treatment subsequent to attending the group's intensives, one participant was hospitalized and another committed suicide."  (Docket No. 1, Ex. A.)  The phrase "committed suicide" was a link to a separate article published by the Albany Times Union about an Alaskan woman who, according to the article, attended classes at NXIVM, and later committed suicide.

Ross's article went on to discuss a piece in Forbes magazine that had reported, "people see a darker and more manipulative side to Keith Raniere (president of NXIVM). Detractors say he runs a cult-like program aimed at breaking down his subjects psychologically, separating them from their families and inducting them into a bizarre world of messianic pretensions, idiosyncractic language and ritualistic practices."  (Docket No. 1, Ex. A.)

Following Ross's article, Metroland Magazine, Inc., published an article about NXIVM. (Compl., ¶ 66; Docket No. 1, Ex. C.)  This piece contained quotations from Ross, which, among other things, states, "[w]hat Raniere is obviously doing is gearing up for the college crowd.  The demographic that has been the most lucrative, the most fruitful for cults is 18 to 26."  (Docket No. 1, Ex. C.)  The article referred to Ross as a "leading cult deprogrammer and controversial critic of NXIVM."  (Id.)

## III.  DISCUSSION

A.  **Removal Requirements**

When a plaintiff files a complaint in state court that could have been filed in federal court, Congress allows the defendant or defendants to remove the action from state to federal court pursuant to 28 U.S.C. sections 1441 and 1446.  Section 1441 sets forth the jurisdictional basis for removal, while section 1446 sets forth the procedural requirements for removal to federal court.

Section 1441 recognizes federal diversity jurisdiction as an acceptable jurisdictional basis for which an action may be removed to federal court.  28 U.S.C. 1441(b).  To meet the requirements of federal diversity jurisdiction, the action must involve citizens of different states, and the amount in controversy must exceed $75,000.  28 U.S.C. § 1332(a).

Section 1446 sets forth various procedural requirements that must be met.  For instance, "the notice must be signed in accordance with Rule 11 of the Federal Rules of Civil Procedure, and must contain a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  Borden v. Blue Cross and Blue Shield of Western New York, 418 F. Supp. 2d 266, 269-70 (W.D.N.Y. 2006) (citing 28 U.S.C. § 1446(a)).  Although courts generally require that all named defendants consent to removal, there are exceptions to this rule.  Ell v. S.E.T. Landscape Design, Inc., 34 F. Supp. 2d 188, 193-94 (S.D.N.Y. 1999).  Lastly, the notice of removal must be filed within thirty days after the defendant receives a copy of the initial pleading.

**B.     Defendants' Notice of Removal**

Defendants Morris and Rochelle Sutton and Lollytogs removed this action on the basis of federal diversity jurisdiction. Defendants argue that complete diversity exists because the three individual Defendants – Morris Sutton, Rochelle Sutton, and Ross – all reside in New Jersey, and Lollytogs, a New York corporation, was fraudulently joined for the purpose of defeating diversity jurisdiction. Further, Defendants note that the amount in controversy exceeds $75,000.

Defendants also maintain that they removed this action consistent with the procedural requirements of section 1446. Defendants state they were made aware that Plaintiff had filed a Complaint in the Supreme Court for the State of New York, Niagara County, on March 11, 2009, and they received a copy of that initial pleading. (Docket No. 1, ¶ 1.) Thereafter, on April 9, 2009, Defendants Suttons and Lollytogs removed the case to this Court. (Id. at ¶ 4.)

**C.     Plaintiff's Motion to Remand**

Plaintiff moves to remand this case on four separate grounds: (1) removal was premature; (2) the removal notice lacks consent from all Defendants; (3) the removal notice fails to comply with the requirements of Rule 11 of the Federal Rules of Civil Procedure; and (4) complete diversity does not exist. (Docket No. 16, ¶ 2.) Each ground is discussed below.

*1.     Premature Removal*

Plaintiff first argues that Defendants prematurely removed this action because none of the Defendants had been formally served with the Summons or Complaint prior to, or

5

at the time, they removed this case. (Docket No. 16, ¶ 15.) Because Defendants have not yet been served, Plaintiff argues they are not parties to this action, and therefore, could not remove the case. In support, Plaintiff cites Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999). Plaintiff also argues that Defendants lacked "standing" to remove this case. (Docket No. 16, ¶¶ 8-15.)

Contrary to Plaintiff's contention, there is no statutory requirement that Defendants be formally served with the Summons or Complaint prior to removal. Rather, section 1446(b) provides that a notice of removal must be filed "within thirty days after the receipt by the defendant, *through service or otherwise*, of a copy of the initial pleading." 28 U.S.C. § 1446(b) (emphasis added). Here, Defendants received a copy of the initial pleading, the Complaint, after Plaintiff commenced this action in state court, yet prior to Plaintiff formally serving it upon them. And after evaluating the Complaint's allegations, Defendants filed their notice of removal.

Plaintiff's reliance on Murphy Bros., is misplaced. As Defendants correctly point out, the issue in Murphy Bros., was whether the defendant waited *too long* to file its notice of removal. There, a plaintiff filed a complaint in state court and then faxed a copy of the complaint to the defendant. Fourteen days later, the plaintiff formally served the complaint on the defendant. Thirty days after the plaintiff formally served defendant with the complaint, and forty-four days after the plaintiff received a faxed courtesy copy, the defendant removed the case. The plaintiff moved for remand, arguing that the defendant's removal was untimely as the thirty day time period for removal began to run once the defendant received the fax copy.

The United States Supreme Court disagreed with the plaintiff, and held that removal

6

was timely because the 30-day time frame from which a Defendant must remove a case was triggered by the formal service of process, not the informal faxing of the complaint. Murphy Bros., 526 U.S. at 354-55.  The Court reasoned that,"one becomes a party officially, and is *required to take action* in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served *must appear and defend*."  Murphy Bros., 526 U.S. at 350 (emphasis added).  The Court never discussed the defendant's options *prior to* formal service, nor did it determine that a removal would be premature if it was filed *prior* to formal service.  Plaintiff offers no other authority for its argument that a defendant, armed with a copy of the Complaint from which it can intelligently ascertain the basis for removal, is prohibited from removing an action prior to Plaintiff's formal service of process.

Plaintiff's standing argument is essentially a continuation of its argument that removal was premature.  For instance, Plaintiff contends that Defendants lacked standing to file a notice of removal because no "prospective defendant" had been served.  Plaintiff cites various sections of the New York Civil Practice Laws and Rules in support of its position.  But, as Defendants correctly point out, these sections discuss how a plaintiff must serve process, and note when and how the defendant becomes obligated to respond.  These sections have no bearing on whether a defendant may remove an action prior to formal service.  As a result, Plaintiff's argument is similarly misplaced.

### 2. *Defendants' Notice of Removal Lacks Unanimous Consent*

Plaintiff argues that removal was improper, and remand is warranted, because not all Defendants have consented to removal.  (Docket No. 16, ¶ 19.)  Although there is a

7

general rule requiring that all defendants consent to removal, an exception exists where "the non-joining defendants have not been served with service of process at the time the removal petition is filed." Ell v. S.E.T. Landscape Design, Inc., 34 F. Supp. 2d 188, 194 (S.D.N.Y. 1999) (citing cases). Here, Defendant Ross, the non-joining defendant, has not been served. Therefore, the removing Defendants did not need to obtain Ross's consent to properly remove this case.

### 3. *Defendants' Failure to Comply with Rule 11*

Plaintiff argues that remand must be granted because all named Defendants have not signed the removal petition, and it therefore fails to comply with Rule 11 of the Federal Rules of Civil Procedure. (Docket No. 16, ¶ 25.)

Section 1446 expressly incorporates the requirements of Rule 11. And Rule 11 requires that, "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name...." Fed. R. Civ. P. 11. Because David Brock, Esq., attorney for Defendants Suttons and Lollytogs, signed the notice of removal, Defendants satisfy the requirements of Rule 11. To the extent Plaintiff suggests that Defendant Ross's signature, or the signature of Ross's attorney, was also required, this Court rejects this suggestion for the reasons mentioned above.

### 4. *Lack of Complete Diversity*

Plaintiff argues that Defendants fail to satisfy the requirements of federal diversity jurisdiction because Defendants Suttons and Lollytogs are all citizens of New York state, as is Plaintiff. The Suttons affirm that they neither reside nor own property in New York. They and Lollytogs, which has filed a Motion to Dismiss, also contend that Lollytogs was

fraudulently joined and should not be considered in determining jurisdiction.

### a. The Suttons

Plaintiff alleges that Morris and Rochelle Sutton are New York residents because they each own property in New York. (Compl., ¶ 3.) Plaintiff has produced a Tax Record for a "Morris C. Sutton" residing in Brooklyn, New York.[1] However, the Morris Sutton in these proceedings is "Morris J. Sutton." (Docket No. 28, Morris Cert., ¶ 2.) And Morris J. Sutton does not own property in New York. (Id.) Morris J. Sutton resides in New Jersey. (Id. at ¶ 1.) Similarly, while a "Rochelle Sutton" may own property in New York, Defendant Rochelle Sutton does not; she lives at the same New Jersey address as Morris J. Sutton. (Docket No. 29, ¶¶ 1-2.) Because the Suttons do not own property, or reside, in New York, the Suttons are not considered New York residents, and diversity exists between Plaintiff and Defendant Suttons.

### b. Lollytogs

Defendants argue that Lollytogs, a New York corporation, was fraudulently joined in an effort to frustrate federal diversity jurisdiction. Defendants argue that, based upon the allegations in the Complaint, there is no possibility Plaintiff can state a claim against Lollytogs.

To establish fraudulent joinder, Defendant must demonstrate by clear and convincing evidence that there is outright fraud in Plaintiff's pleadings or that there is no possibility of stating a claim against Lollytogs (the non-diverse defendant) in state court. See Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). "The defendant

---

[1] Plaintiff names "Morris Sutton" as a defendant in the Complaint. But in its Motion to Remand, Plaintiff specifies that the defendant's name is "Morris C. Sutton." (Docket No. 16, ¶ 28.)

9

bears the heavy burden of proving this circumstance [and] all factual and legal ambiguities [must be] resolved in favor of plaintiff." Collins v. Flynn, No. 08-CV-59, 2008 WL 3851842, at *3 (W.D.N.Y. Aug. 15, 2008) (citing Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F. 3d 296, 302 (2d Cir. 2004)).  The defendant's burden is greater than on a motion to dismiss for failure to state a claim. Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F. Supp. 2d 177, 182-3 (S.D.N.Y. 2003) ("In order to show that a defendant was fraudulently joined to defeat removal, it is not sufficient to argue that the complaint fails to state a claim against that defendant; rather, the removing party [must satisfy the clear and convincing standard set forth in Pampillonia]").

In making the inquiry into whether a defendant has been fraudulently joined, courts may look outside the pleadings. See e.g., Pampillonia, 138 F. 3d at 461-62 (looking into affidavits to determine if plaintiff's complaint alleged sufficient factual foundation to support his claim); In re Consolidated Fen-Phen Cases, No. 03-CV-3081 – No. 03-CV-4869, 2003 WL 22682440, at *3 (E.D.N.Y. Nov. 12, 2003); Areseneault v. Congoleum, No. 01-CV-10657, 2002 WL 472256, at *6 (S.D.N.Y. Mar. 26, 2002) (looking outside the pleadings to depositions and other evidence in the record to decide fraudulent joiner issue, because "[t]he Second Circuit ... has said that, on jurisdictional issues 'federal courts may look outside [the] pleadings to other evidence in the record[.]'") (quoting United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc., 30 F. 3d 298, 305 (2d Cir. 1994)).

Here, Plaintiff brings three claims against "all Defendants," which presumably

10

includes Lollytogs[2]: (1) conspiracy to commit product disparagement (seventh cause of action); (2) conspiracy to commit tortious interference with prospective business advantage (eleventh cause of action); and (3) conspiracy with Metroland Magazine, Inc. to commit product disparagement, prima facia [sic] tort, defamation, and tortious interference with prospective business advantage (thirteenth cause of action). To succeed on its fraudulent joinder claim, Defendants must prove, by clear and convincing evidence, and based upon all evidence in the record, that there is no possibility Plaintiff can state a claim in state court against Lollytogs. If this Court finds there is a possibility that Plaintiff can state even one claim against Lollytogs, then Lollytogs cannot be found to have been fraudulently joined, and remand must be granted.

The parties do not dispute the applicable choice of law, and appear to agree that New York law applies to this case.[3] To plead a claim for a civil conspiracy to commit tortious conduct under New York law, Plaintiff must engage in a two step process. First, Plaintiff must plead the underlying tort. See World Wrestling Federation Entertainment, Inc. v. Bozell, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001). Second, Plaintiff must plead the existence of a conspiracy, which requires: (1) a corrupt agreement between two or more partes; (2) an overt act in furtherance of the agreement; (3) the parties' intentional

---

[2] In the Complaint's introductory sentence, Plaintiff states that Morris Sutton, Rochelle Sutton, and Lollytogs "are sometimes hereinafter aggregately referred to as 'Suttons.'" There is simply no way to discern where those occasional references are intended, but the Court presumes Lollytogs in included in the claims against "all Defendants." Lollytogs is referred to by name only at paragraphs 8, 10, 11 & 12 of the Complaint.

[3] Defendants' memorandum of law on the issue of fraudulent joinder discusses Plaintiff's alleged inability to state a claim under New York law. (Docket No. 30, pp 11-15.) Additionally, Plaintiff's Motion for Remand discusses fraudulent joinder by citing New York federal district court cases and Second Circuit cases. (Docket No. 16, ¶¶ 34-40.)

participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." Fezzani v. Bear, Stearns & Co., 592 F. Supp. 2d 410, 423 (S.D.N.Y. 2008); Williams v. Sidley Austin Brown & Wood, L.L.P., 824 N.Y.S.2d 759, at *3 (2006).

      Defendants have clearly and convincingly demonstrated that there is no possibility Plaintiff can state a claim against Lollytogs for conspiracy to commit any of the alleged tortious conduct because Plaintiff has not alleged Lollytogs's participation in a conspiracy. Because all three of Plaintiff's claims against Lollytogs involve an alleged civil conspiracy, there is no possibility Plaintiff can state even one of its three claims against Lollytogs. For instance, Plaintiff has not alleged any of the four elements for a civil conspiracy as to Lollytogs. There are no allegations in the Complaint, nor is there any indication elsewhere in the record, that Lollytogs entered into a corrupt agreement, took any overt act in furtherance of the agreement, or intentionally participated in such. And although Plaintiff alleges that it suffered damages, or a "drop-off" in its business, Plaintiff does not attribute its damages to any act by Lollytogs.

      The Complaint does contain various conclusory allegations about how Lollytogs "allowed itself to be used ... joined in on the scheme ... and [the Suttons] used the ... assets of Lollytogs." (Compl., ¶ 8.) But there is not one factual allegation in the Complaint, or elsewhere in the record, that provides any support for these conclusory statements. The only fact allegation relating to Lollytogs involves the two meetings between Michael Sutton and Ross that were held at Lollytogs's corporate offices. (Compl., ¶ 12.) However, the Complaint clearly indicates that the purpose of these two meetings was to have Ross attempt to persuade Michael Sutton to leave NXIVM. (Compl. ¶ 12.) The Complaint notes that it was only after Ross's attempts to persuade Michael to leave NXIVM proved

unsuccessful, that the Suttons – not Lollytogs – allegedly began their "attack upon NXIVM." (Compl. ¶ 13.)

. . .

Based upon all of the allegations contained in the Complaint, and all other evidence in the record, which this Court has reasonably construed in the light most favorable to Plaintiff, this Court finds that Defendants have clearly and convincingly demonstrated there is no possibility that Plaintiff can state a claim against Lollytogs under New York law for conspiracy to commit any of the alleged tortious conduct.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is denied.  Additionally, Lollytogs is terminated from this case.

### V.  ORDERS

IT IS HEREBY ORDERED, that Plaintiff's Motion to Remand to State Court (Docket No. 16) is DENIED.

FURTHER, that the Clerk of the Court is directed to terminate Lollytogs as a defendant in this action.

FURTHER, that Lollytogs's Motion to Dismiss (Docket No. 17) is DENIED as moot.

SO ORDERED.

Dated: June 19, 2009
      Buffalo, NY

                                          /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                         United States District Judge